**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARRAMERICA REALTY CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NVIDIA CORPORATION, et al.,<br><br>　　　　Defendants. | NO. C 05-00428 JW<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND;**<br>**SETTING FURTHER CASE MANAGEMENT CONFERENCE** |

## I. INTRODUCTION

The former directors and officers of 3dfx Interactive, Inc. (3dfx Defendants), the nVidia individual defendants, and nVidia Corporation, nVidia U.S. Investment (nVidia Defendants), (collectively "Defendants") seek dismissal of the newly asserted claims set forth in the Second Amended Complaint ("SAC") filed by CarrAmerica Realty Corporation ("CarrAmerica"). On October 18, 2005, this Court held a hearing on Defendants' motions.[1] For the following reasons, this Court dismisses the claims in the SAC for lack of standing and grants CarrAmerica leave to amend in accordance with this Order.

---

[1] At the hearing, counsel for Carlyle Fortran Trust in related case <u>Carlyle v. nVidia</u>, 05cv427JW presented arguments that this Court understands to be common to Carlyle and CarrAmerica. The Court's order in the related case is at Order Dismissing Third Amended Complaint, Docket No. 133.

## II. BACKGROUND

Based on the papers filed by the parties, the following facts are uncontested: 3dfx was a public company in the business of developing and selling graphic chips, graphics boards, and related technology. Pursuant to a lease dated July 23, 1998, CarrAmerica leased approximately 26,000 square feet of commercial space in Austin, Texas to 3dfx. The lease ran through August 2004. nVidia was a competitor of 3dfx also in the business of developing and selling graphics technology. In late 2000, nVidia and 3dfx structured and entered into an Asset Purchase Agreement ("APA") where nVidia paid $70 million in cash plus 1,000,000 shares of nVidia common stock for certain assets from 3dfx including its portfolio of patents, trademarks, and applications. The APA also provided that 3dfx would dissolve after consummating its transaction with nVidia. The exact effects and motivations behind the structuring of the APA's terms are at issue in the present litigation.

Subsequent to the APA, 3dfx ceased paying rent to CarrAmerica. CarrAmerica filed a collection action against 3dfx in Texas and obtained a judgment. On June 28, 2005, this Court entered an Order granting CarrAmerica leave to file the SAC. Presently before the Court are nVidia and 3dfx Defendants' motions to dismiss the SAC's allegations that Defendants' breached their fiduciary duties.

## III. STANDARDS

Under Rule 12(b)(6), a plaintiff's claims or entire complaint may be dismissed by the court for "failure to state a claim upon which relief can be granted." Rule 12(b)(6). See, e.g., Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, 407 F.3d 1027, 1032 (9th Cir. 2005) (affirming district court's partial Rule 12(b)(6) dismissal). A Rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the complaint. The court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally in the negative, the motion must be denied. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); De La Cruz v. Tormey (9th Cir. 1978). In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff, (2) accept all well-pleaded factual allegations as true, and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir.

2

1996). Because of the liberal federal pleading rules, a 12(b)(6) dismissal is proper only in "extraordinary" cases. U.S. v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

## IV.  DISCUSSION

As an initial matter, CarrAmerica must have standing to pursue the claims it asserts in the SAC. Defendants contend that CarrAmerica has no standing to bring certain claims in the SAC, because such claims belong exclusively to the Trustee.[2] CarrAmerica argues that the Trustee has no standing to pursue the claims in the SAC because these claims do not belong to the debtor. Contrary to CarrAmerica's position, the law of the Ninth Circuit requires that this Court dismiss the general claims in the SAC for lack of standing.

Under California law as interpreted by the Ninth Circuit, the authority to pursue a debtor's general causes of action is delegated exclusively to the bankruptcy trustee, unless the creditor can show particularized injury. In re Folks, 211 B.R. 378 (9th Cir. BAP 1997). In In re Folks, the Ninth Circuit held that the bankruptcy trustee has exclusive jurisdiction for general claims: "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." Id. at 386. In so doing, the Ninth Circuit defined personal claims as those held by the creditor, and distinguished these personal claims from general claims over which the bankruptcy trustee has exclusive standing:

> A cause of action is personal if the claimant himself is harmed and no other claimant or creditor has an interest in the case. A general claim exists if the liability is to all creditors of the corporation without regard to the personal dealings between such officers and creditors.

Id. at 386 (citations and quotations to Koch v. Farmers Union Cent. Exchange, Inc., 831 F.2d 1339 (7th Cir. 1987) omitted). More recently, the Ninth Circuit has expanded the holding of In re Folks to grant

---

[2] In the motions presently before the Court, Defendants do not apply their standing argument to every claim in the SAC. However in the interests of judicial efficiency, and in accordance with a district court's "power and...duty to raise the adequacy of [plaintiff]'s standing sua sponte," Bernhardt v. County of Los Angeles, 279 F.3d 862, 868 (9th Cir. 2002), this Court will determine Plaintiffs' standing as to each claim in the SAC.

3

1  standing to a bankruptcy trustee where the trustee alleged that defendants' "dissipation of assets limited the
2  firm's ability to pay creditors." In re Smith, 421 F.3d 989, 1004 (9th Cir. 2005).  Recognizing that "the
3  economic reality that any injury to an insolvent firm is necessarily felt by its creditors," the Ninth Circuit in In
4  re Smith nevertheless held that the defendants' acts in dissipating corporate assets gave rise to a general
5  claim. Id. [3]

A.   Claims Based on Violation of the Lease Terms

Claim 1 of the SAC alleges that Defendants "were aware of the contractual relationship" between CarrAmerica and 3dfx and "intended to induce a breach of the Lease by [3dfx] and intentionally interfered with the existing contractual relationship." (SAC ¶¶ 23-24.)  While a claim that an asset purchase agreement was designed to escape liability from a particular creditor would ordinarily be an allegation of particularized injury, there does not appear to be anything in the SAC that alleges that Defendants acted with CarrAmerica in mind.  CarrAmerica's allegation that Defendants knew of the Lease as a result of due diligence prior to the APA is insufficient to support an allegation that the injury was particularized. Defendants were likely aware of all creditors' contracts with 3dfx, and CarrAmerica does not allege that Defendants were particularly aware of the Lease, or structured the APA to evade the Lease in particular. Based on the facts alleged in the SAC, any creditor could allege that the APA was "for the fraudulent purposes of allowing 3dfx to evade its liability" to any or all of the creditors.  Even under the liberal federal pleading rules, CarrAmerica has failed to state a claim for particularized injury in this claim, and thus claim 1 is a general claim that the Trustee has exclusive standing to assert.

---

[3] At the hearing on October 18, 2005, and in Plaintiff's Motion for Leave to File (Docket No. 129), counsel for Carlyle in the related case 05cv427JW argued that In re Smith supports its position because the Ninth Circuit did not expressly grant the bankruptcy trustee *exclusive* standing.  First, even if Carlyle is correct that In re Smith only held that the trustee has standing along with the creditors, the holding in In re Folks granting the bankruptcy trustee exclusive standing for general creditor claims has not been superceded by other Ninth Circuit or Supreme Court decisions.  Second, on this Court's reading of In re Smith, the trustee action was the only case before the Ninth Circuit, and thus it had no jurisdiction to deny standing to a separate action involving plaintiffs before a Colorado court.

B. <u>Claims Based on Insufficient Consideration Provided by the APA for 3dfx's Assets.</u>

A number of the claims in the SAC are based on the general allegation that the structure of the APA dissipated the amount of assets available to pay all creditors. For example, the core of the allegations in claims 2 and 3 as currently presented in the SAC are based on a general allegation of insufficient consideration to all creditors. In ¶ 33 of the SAC, CarrAmerica alleges:

> Defendants' conduct was independently wrongful, in that it was part of a conspiracy to acquire [3dfx's] significant intellectual property assets and other rights while concurrently avoiding significant liabilities, *such as* liability to [CarrAmerica] under the Lease, associated with the acquisition of such rights, all for inadequate consideration in violation of established principles.

(emphasis added). Similarly, claims 7-9 are based on the allegation that "as a result of the [APA], [3dfx] was rendered insolvent." (TAC ¶ 71). As alleged, these claims are not particular to CarrAmerica. The dissolution of a corporation where liabilities exceed assets rendering the corporation unable to fulfill its obligations, is at the heart of bankruptcy. The exact injury to each creditor as a result of the dissolution of an insolvent corporation may vary, but this variation does not make the injury "particularized" within the meaning of the term as used by the Ninth Circuit. Since the injury caused by the dissolution of 3dfx with insufficient assets to pay its obligations is "to all creditors of the corporation without regard to the personal dealings between such officers and creditors," <u>In re Folks</u>, 211 B.R. at 386, the Trustee has exclusive jurisdiction to assert the claims arising out of the allegedly APA-caused dissolution of 3dfx.

C. <u>Claims Based on Breach of Fiduciary Duty in Entering into the APA</u>

Under California law, a claim could be stated that the 3dfx Defendants breached their fiduciary duties to the creditors of 3dfx when 3dfx was in the zone of insolvency. <u>See</u> <u>Saracco Tank & Welding Co. v. Platz</u>, 65 Cal. App. 2d 305, 315 (1944). However, CarrAmerica is not the proper party to assert this claim. The Ninth Circuit in <u>In re Smith</u> declined to rule on whether the creditors could have asserted these claims outside the bankruptcy context "because state law often permits creditors to pursue derivative claims on an insolvent corporation's behalf when the corporation itself has been injured by breaches of fiduciary duty." 421 F.3d at 1006. The Ninth Circuit in <u>In re Folks</u>, however, already found that under California state law, derivative claims on an insolvent corporation's behalf are asserted exclusively by the bankruptcy

5

trustee. 211 B.R. at 384-85. Because the claim that Defendants breached their fiduciary duty by entering into an APA which did not provide enough in cash for the bankruptcy estate is general to all creditors, the rule of In re Folks that the trustee has exclusive jurisdiction to assert claims where "liability is to all creditors of the corporation" bars CarrAmerica from asserting a claim for breach of fiduciary duty against Defendants.

### D. Claims Based on the Structure of the APA

To the extent that the injury to CarrAmerica allegedly arose as a result of Defendants agreeing to a deal under the APA which only provided $70 million in cash plus nVidia stock as opposed to the initial offer of $100 million in cash with no stock, the claims remain general and properly asserted by the Trustee. Because the Ninth Circuit has not expressly excluded general creditor claims from the broad grant of exclusive trustee jurisdiction over general claims in In re Folks, this Court is reluctant to carve out such an exception.

This Court recognizes the potential for a conflict of interest between the shareholders and the creditors when Defendants entered into the APA. However, a bankruptcy trustee, appointed after the corporation's liabilities exceed its assets, is the representative of the *bankrupt estate.* Among the trustee's duties is the obligation to "collect and reduce to money the property of the estate." 11 U.S.C. §704(1). The "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. §541(a)(1), including the debtor's "causes of action." In re Smith, 421 F.3d at 1002. At the time of commencement of the Chapter 11 proceedings, Defendants had already entered into the APA. Thus, the "interests of the debtor in property as of the commencement of the case" includes the interest to have the bankrupt estate consist of $100 million in cash instead of $70 million in cash. Accordingly, the diminution in assets of the bankrupt estate as a result of the structure of the APA is the debtor's cause of action properly asserted exclusively by the Trustee.

### V. CONCLUSION

For the reasons set forth above, this Court dismisses the SAC. CarrAmerica is ordered to file a Third Amended Complaint limiting its claims and allegations in accordance with this Order by February 4,

2006. Failure to file a Third Amended Complaint by this deadline may result in dismissal. The parties are ordered to appear before the Court on April 18, 2006 at 10:00 a.m. for a case management conference.

Dated: November 10, 2005

05cv428dismSAC

/s/ James Ware
JAMES WARE
United States District Judge

**United States District Court**
For the Northern District of California

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Douglas A. Applegate daa@sezalaw.com
Dwight Craig Donovan Dwight@mbvlaw.com
3  George M. Lee gml@sezalaw.com
Henry H. Oh henry.oh@dlapiper.com
4  James N. Kramer jkramer@orrick.com
John L. Fitzgerald jfitzgerald@pinnaclelawgroup.com
5  Jonathan B. Gaskin jgaskin@orrick.com
Jonathan S. O'Donnell jon@mbvlaw.com
6  Justin Myer Lichterman jlichterman@orrick.com
Karen Johnson-McKewan kjohnson-mckewan@orrick.com
7  Kim Y. Arnone karnone@buchalter.com
Leah Anne Nutting lnutting@orrick.com
8  Morgan William Tovey mtovey@reedsmith.com
Richard C. Darwin rdarwin@buchalter.com
9  Robert P. Varian rvarian@orrick.com
Ruth Young Kwon rkwon@orrick.com
10  William R. Overend woverend@reedsmith.com

11  Office of the U.S. Trustee/SJ
U.S. Federal Bld.
12  280 S 1st St.
San Jose, CA 95113-3004
13
USBC Manager-San Jose
14  US Bankruptcy Court
280 South First Street
15  Room 3035
San Jose, CA 95113
16
James R. Grube
17  U.S. Bankruptcy Court
280 South First Street
18  Room 3035
San Jose, CA 95113
19
David M. Shannon
20  Stephen Pettigrew
Nvidia Corporation
21  2701 San Tomas Expressway
Santa Clara, CA 95050
22
**Dated: November 10, 2005**          **Richard W. Wieking, Clerk**
23
                                       **By:  /s/ JW Chambers_____**
24                                              **Ronald L. Davis**
                                                **Courtroom Deputy**
25

26

27

28

8