United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARRAMERICA REALTY CORPORATION,<br><br>　　　　Plaintiff,<br>　v.<br><br>NVIDIA CORPORATION, et al.,<br><br>　　　　Defendants.<br>_____ / | NO. C 05-00428 JW<br><br>Related Cases:<br>　5:05-cv-00427-JW<br>　5:05-cv-00429-JW<br>　5:06-cv-03856-JW<br>　5:06-cv-03238-JW<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS CARRAMERICA'S THIRD AMENDED COMPLAINT** |

## I. INTRODUCTION

CarrAmerica Realty Corporation ("CARR") brought this action against nVidia Corporation ("NVIDIA"), individual nVidia executives (collectively, "NVIDIA Defendants"), and the former directors and officers of 3DFX Interactive, Inc. ("3DFX Defendants") (collectively, "Defendants"), alleging twelve causes of action related to the now dissolved 3DFX Interactive, Inc.'s ("3DFX") breach of its lease with CARR. The Defendants move to dismiss the claims set forth in CARR's Third Amended Complaint. (hereafter, "TAC," Docket Item No. 83). The Court deemed it appropriate to take the motions under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court GRANTS Defendants' motions.

## II. BACKGROUND

On November 10, 2005, the Court dismissed CARR's Second Amended Complaint ("SAC,", Docket Item No. 27) for lack of standing, and entered an Order granting CARR leave to file a Third Amended Complaint. (Order Dismissing Second Amended Complaint With Leave to Amend; Setting Further Case Management Conference, hereafter, "November 10, 2005 Order," Docket Item No. 82.)

In its Third Amended Complaint, CARR alleges the following:

3DFX was a public company in the business of developing and selling graphic chips, graphics boards, and related technology. (TAC ¶ 11.)

CARR leased approximately 26,000 square feet of commercial space in Austin, Texas to 3DFX on or about July 23, 1998. (TAC ¶ 8.) The lease ran through August 31, 2003. (TAC ¶ 9.)

On or about December 15, 2000, 3DFX and its competitor, NVIDIA, entered into an Asset Purchase Agreement (the "Agreement") under the terms of which at closing NVIDIA would pay to 3DFX $70 million in cash and approximately $40 million in NVIDIA stock in exchange for the transfer to NVIDIA of specified assets of 3DFX including its portfolio of patents, trademarks, and applications. The Agreement also provided that 3DFX would dissolve after closing the asset sale to NVIDIA. (TAC ¶¶ 13, 46.)

At the time of the Agreement, CARR had no knowledge of the agreement. (TAC ¶ 13.)

NVIDIA sought to conceal the true nature of its agreement with 3DFX by labeling the agreement an "asset purchase" because NVIDIA wanted to acquire all of 3DFX's assets without becoming liable to 3DFX's creditors which included CARR. (TAC ¶ 14.)

1  On or about December 15, 2000, immediately after execution of the
2  Agreement, 3DFX ceased operations; its employees were terminated and were hired
3  by NVIDIA.  (TAC ¶ 18.)

4  At some unspecified date, but before the December 15 events described in ¶
5  18, 3DFX and NVIDIA entered into a "secret agreement," to the effect that NVIDIA
6  directed 3DFX "to continue making lease payments as if it, and not NVIDIA were
7  occupying the premises and that NVIDIA would reimburse 3DFX for these payments
8  at a future date.  (TAC ¶ 21.)

9  The payments made pursuant to the "secret agreement" created the false
10 impression that 3DFX remained a viable tenant.  If CARR had known the "true state
11 of affairs," it would have insisted that either NVIDIA assume the lease or that 3DFX
12 vacate so that CARR could lease the premises to a new tenant. (TAC ¶ 21.)

13 Eventually, 3DFX stopped paying rent allegedly pursuant to the "secret
14 agreement."  (TAC ¶ 23)

On the basis of these allegations, CARR asserts claims for: 1) interference with contractual relations against the NVIDIA Defendants; 2) intentional interference with prospective economic advantage against the NVIDIA Defendants; 3) negligent interference with prospective economic advantage against the NVIDIA Defendants; 4) successor liability against NVIDIA; 5) fraudulent transfer against all Defendants under Civil Sections 3439.04(a); 6) 3439.04(b)(1); 7) and 3439.04(b)(2); 8) declaratory relief against all Defendants; 9) breach of fiduciary duty against the 3DFX Defendants; 10) fraud against all Defendants; 11) conspiracy against all Defendants; and 12) tort of another against all Defendants.

Defendants move to dismiss the Third Amended Complaint on the ground that it fails to allege facts which would entitle CARR to relief.

### III.  STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  Navarrov. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may be

1  dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory or (2)
2  insufficient facts stated under a cognizable theory." Robertson v. Dean Witter Reynolds, Inc., 749
3  F.2d 530, 534 (9th Cir. 1984).  "A complaint should not be dismissed for failure to state a claim
4  unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
5  which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The court "must
6  presume all factual allegations of the complaint to be true and draw all reasonable inferences in
7  favor of the non-moving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)
8  (citing Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985) cert. denied,
9  474 U.S. 1056 (1986)).  However, the court "need not assume the truth of legal conclusions cast in
10 the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2
11 (9th Cir. 1986) (citing Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981), cert.
12 denied, 454 U.S. 1031 (1981)).

A motion to dismiss on the ground that the plaintiff lacks standing to pursue the claim is properly made pursuant to Federal Rule of Civil Procedure 12(b)(6). Michael Schmier v. United States Court of Appeals for the Ninth Circuit, et al., 279 F.3d 817 (9th Cir. 2002).

### IV. DISCUSSION

**A.  A creditor lacks standing to pursue a claim against a defendant for injury inflicted upon a bankrupt company because the right to pursue the claim vests in the Trustee, unless the creditor is alleging an injury particularized to that creditor only.**

As explained in the November 10, 2005 Order, and despite CARR's insistence to the contrary, under California law as interpreted by the Ninth Circuit, standing to pursue a general creditor's cause of action is delegated exclusively to the bankruptcy trustee, unless a creditor can show particularized injury. In re Folks, 211 B.R. 378 (9th Cir. BAP 1997); (November 10, 2005 Order at 3.)

"If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's actions." Id. (quoting Kalb, Voohis Co

4

v. American Fin. Corp., 8 F.3d 130 (2d Cir. 1993) (citations omitted.).  A cause of action is general "if the liability is to all creditors of the corporation without regard to the personal dealings between [the corporation's] officers and such creditors."  Id. (quoting Koch Refining v. Farmers Union Cent. Exchange, Inc., 831 F.2d 1339, 1349 (7th Cir. 1987).  If, on the other hand, "the claimant himself is harmed and no other claimant or creditor has an interest in the cause," the cause of action is personal to the creditor.  Id. (quoting Koch Refining, 831 F.2d at 1348-49.)  Injury to the creditor is thus a determining factor.  "To determine whether an action accrues individually to a claimant or generally to the corporation, a court must look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors."  Koch, 831 F.2d at 1348-9.

Furthermore, the Ninth Circuit has expanded the holding of In re Folks to grant standing to a trustee of a bankrupt firm where the trustee alleges that a defendant's dissipation of corporate assets limited the firm's ability to pay its creditors.  In re Smith, 421 F.3d 989, 1004 (9th Cir. 2005).  Despite "the economic reality that any injury to an insolvent firm is necessarily felt by its creditors," the Defendants' acts in dissipating corporate assets via the Agreement gives rise to only a general claim for which the bankruptcy trustee has exclusive standing to pursue.  Id.

**B.     CARR's First Claim for Intentional Interference with Contractual Relations does not allege a claim for particularized injury.**

CARR alleges that the NVIDIA Defendants intentionally interfered with the contractual relationship between CARR and 3DFX by entering into the Agreement and by entering into the "secret agreement."  This claim is essentially the same claim that was asserted in the Second Amended Complaint except for the alleged "secret agreement."  The Court has previously determined that CARR lacks standing to pursue claims resulting from the Agreement.  Therefore, the issue becomes whether, if CARR alleges breach of the lease and related claims pursuant to both the Agreement and the alleged "secret agreement," it states a claim for a particularized injury.

CARR contends that its Third Amended Complaint alleges a particularized injury because the alleged "secret agreement" only affected 3DFX's rental obligation to CARR.  CARR contends

5

that if, as it alleges, 3DFX ceased making rent payments and abandoned the premises "pursuant to" the alleged "secret agreement", this transforms its claim to one for a particularized injury.

Even accepting as true the allegation that 3DFX sold its assets and shut down its operations under both the Asset Purchase Agreement and this newly alleged separate "secret agreement," the cause of any harm suffered by CARR remains the transfer of assets and cessation of operations under the Agreement. Allegations that the harm suffered was caused by the alleged "secret agreement" to have 3DFX continue to pay rent is no more than artful pleading to avoid the overriding effect of the Agreement. If there was any interference with contractual obligations of 3DFX due to lack of notice of its impending demise, that interference came from lack of notice of the Agreement itself, which affected all creditors.

The Court is not called upon to comment whether the bankruptcy trustee has a claim against NVIDIA for contractual interference resulting from the alleged "secret agreement".

The Court DISMISSES CARR's First Claim for Intentional Interference with Contractual Relations without leave to amend on the ground that the alleged facts state a claim of harm to the corporation which affected all creditors.

**C.     CARR's Second and Third Claims for Intentional and Negligent Interference with Prospective Economic Advantage Claims have been withdrawn.**

Given CARR's stated intention to withdraw the Second and Third Causes of Action in its submitted opposition papers, the Court DISMISSES CARR's Second and Third claims. (CARR's Memorandum of Points and Authorities in Opposition to the NVIDIA Defendants' Motion to Dismiss Third Amended Complaint, at 5, Docket No. 112.)

The dismissal is without prejudice; however, there is no reason to believe that the Court would not apply the same legal analysis to these claims as all other claims against NVIDIA.

**D.     CARR's Fourth Claim for Successor Liability is derived from its infirm First Claim and is thereby, dismissed.**

CARR relies word-for-word on the allegations in its Second Amended Complaint to support its successor liability claim in its Third Amended Complaint. (Compare SAC ¶¶ 40-45 with TAC ¶

6

¶ 39-44.)  While CARR's allegations of a "secret agreement" between NVIDIA and 3DFX, described *supra*, are incorporated by reference into this claim, CARR has made no attempt to draw a causal connection between the alleged "secret agreement" and its successor liability claim.  Since the Court has previously determined that this claim as alleged in the Second Amended Complaint is a general claim for which CARR lacks standing to pursue, and CARR has not remedied its lack of standing, the Court DISMISSES CARR's Fourth Claim for Successor Liability without leave to amend.

**E.   CARR's Fifth, Sixth and Seventh Claims for Fraudulent Transfer are general claims and are thereby, dismissed.**

CARR's allegations in support of its fraudulent transfer claims are substantially the same as those in its Second Amended Complaint.  (Compare SAC ¶ ¶ 50-75 with TAC ¶ ¶ 45-73.)  By way of explanation, CARR states that its prosecution of the claims were ordered stayed pending resolution of the underlying proceeding pending in the U.S. Bankruptcy Court for the Northern District of California, and that to the extent the stay is still binding, it will defer prosecution of the claims pending resolution of the adversary proceeding.  (TAC ¶ ¶ 57, 65, 73.)  However, the Court has previously determined CARR's fraudulent transfer claims to be general claims (see November 10, 2005 Order at 4), and CARR's statements concerning deferment of prosecution does not remedy its lack of standing.

The Court DISMISSES CARR's Fifth, Sixth and Seventh Claims for Fraudulent Transfer without leave to amend.

**F.   CARR's Eighth Claim for Declaratory Relief is derivative of infirm claims and is thereby, dismissed.**

CARR has asked the Court to issue a "judicial determination of the rights and duties of CARR and [D]efendants" with respect to NVIDIA's alleged successor liability and obligations under the Lease.  (See TAC ¶ ¶ 75-77.)  "'[A] request for declaratory relief will not create a cause of action that otherwise does not exist.'  Rather, 'an actual present controversy must be pleaded specifically' and 'the facts of the respective claims concerning the [underlying] subject must be given.'" City of

7

1 Cotati v. Cashman, 29 Cal. 4th 69, 80 (2002) (citations omitted). Accordingly, CARR's claim for

2 declaratory relief is wholly derivative of its foregoing claims.

3 The Court DISMISSES CARR's Eighth Claim for Declaratory Relief without leave to

4 amend.

5 **G.     CARR's Ninth Claim for Breach of Fiduciary Duty fails to state a claim.**

6 CARR alleges that the 3DFX Defendants breached their fiduciary duties owed to CARR as a

7 creditor by entering into the "secret agreement" with NVIDIA which concealed the fact that 3DFX

8 would be going out of business and would eventually breach the Lease. (TAC ¶¶ 79-81.)

9 A corporation's directors and officers owe no fiduciary duty to creditors under California law

10 until the corporation becomes insolvent. In re Jacks, 243 B.R. 385, 390 (Bankr. Ct. C.D. Cal. 1999),

11 aff'd in part, rev'd in part, 266 B.R. 728 (9th Cir. B.A.P. 2001).[1] "Because a director's fiduciary

12 duties to creditors do not arise until the corporation is insolvent, the timing of the insolvency is

13 critical." In re Jacks, 266 B.R. at 738. The time of insolvency as determined under California law is

14 the point at which the corporation is unlikely to be able "to meet its liabilities . . . as they mature."

15 Id. (quoting Cal. Corp. Code § 501).

16 Once a corporation becomes insolvent, the scope of a director's or officer's fiduciary duty to

17 creditors is to not "divert, dissipate or unduly risk assets necessary to satisfy their claims." In re Ben

18 Franklin Retail Stores, Inc., 225 B.R. 646, 655 (Bankr. Ct. N.D. Ill.1998), amended and superseded

19 by, 2000 WL 28266 (N.D. Ill. Jan. 12, 2000). California courts have applied the "trust fund

20 doctrine" where "all of the assets of a corporation, immediately on its becoming insolvent, become a

---

[1] As the In re Jacks Bankruptcy Court noted: "[t]o a substantial extent, the right to recover from directors or officers of California corporations for the violation of their fiduciary duties has been codified in California statute." In re Jacks, 266 B.R. at 391. On appeal, the In re Jacks Bankruptcy Appellate Panel commented that although "California's Corporation Code provides a remedy for an insolvent corporation's director's violations of fiduciary duties to creditors . . . 'the common law is not repealed by implication or otherwise, if there is no repugnancy between it and the statute, and it does not appear that the legislature intended to cover the whole subject.' California's corporate statutes, while modifying remedies, do not eliminate the trust comprised of corporate assets that arises upon a corporation's insolvency." In re Jacks, 266 B.R. at 737 (internal citation omitted). Since CARR does not raise this claim in a statutory context, the Court does not consider its application, but rather, considers the common law application of CARR's claim to determine if there was a breach of a fiduciary duty for the purposes of this Order.

8

1 trust fund for the benefit of all of its creditors." In re Jacks, 266 B.R. at 736 (quoting Saracco Tank
2 & Welding Co., Ltd. v. Platz, 65 Cal. App. 2d 306, 315 (1944) (internal citation omitted)).  Under
3 the trust fund doctrine, the directors and officers of the insolvent corporation become fiduciaries
4 whose obligations to the creditors is to protect the assets of the insolvent corporation to satisfy their
5 claims.  See, e.g. Saracco, 65 Cal. App. 2d at 315.

6 Recovery for breaching this fiduciary duty generally pertains to cases where the directors or
7 officers of an insolvent corporation have diverted assets of the corporation "for the benefit of
8 insiders or preferred creditors."  In re Ben Franklin, 225 B.R. at 655 (quoting from Laura Lin, Shift
9 of Fiduciary Duty Upon Corporate Insolvency: Proper Scope of Directors' Duty of Creditors, 46
10 Vand. L. Rev. 1485, 1512 (1993)); see also Bank of America v. Musselman, 222 F. Supp. 2d 792
11 (E.D. Va. 2002); see also Helm Financial Corp. v. MNVA R.R., 212 F.3d 1076, 1081 (8th Cir.
12 2000).

13 Although the Court is unaware of any California cases that expressly limit the fiduciary duty
14 under the trust fund doctrine to the prohibition of self-dealing or the preferential treatment of
15 creditors, the scope of the trust fund doctrine in California is reasonably limited to cases where
16 directors or officers have diverted, dissipated, or unduly risked the insolvent corporation's assets.
17 See In re Jacks, 266 B.R. at 736 (trust fund doctrine applied to a director's use of an insolvent
18 corporation's assets to guarantee a personal debt); c.f. Commons v. Schine, 35 Cal. App. 3d 141, 145
19 (1973) (trust fund doctrine applied to a controlling partner's preference in paying insolvent
20 partnership's debt to his own creditor corporation); see also Saracco, 65 Cal. App. 2d 306 (1944)
21 (trust fund doctrine applied to a director's preferential distribution of assets); see also Wright Motor,
22 299 F. 106 (1924) (trust fund doctrine applied to a director's fraudulent transfer of corporate assets
23 to himself); c.f. Title Ins. etc. Co. v. California Dev. Corp., 171 Cal. 173 (1915) (trust fund doctrine
24 applied to a company controlling an insolvent development corporation's preferential payment of the
25 insolvent development corporation's debts); see also Bonney v. Tilley, 109 Cal. 346 (1895) (trust
26 fund doctrine applied to directors of an insolvent corporation, who were also creditors of the
27 corporation, secured a preference to their claims over other creditors' claims).  Given the application

9

of the trust fund doctrine in California, the scope of the fiduciary duty to creditors can be broadly defined as not diverting, dissipating or unduly risking the corporate assets needed to satisfy creditors' claims.

As the court observed in <u>In re Ben Franklin</u> in defining the scope of a director's fiduciary duty to creditors under Delaware law, "the 'insolvency exception' to the general rule that directors owe no duty to creditors is, after all, an exception.  Its scope should be no greater than the problem it was intended to solve." <u>In re Ben Franklin</u>, 225 B.R. at 655-56.  A similar approach is taken by the Court in determining whether the 3DFX Defendants could have breached a fiduciary duty owed to CARR as a creditor by entering into the "secret agreement".

The Third Amended Complaint alleges that a fiduciary relationship existed between CARR and the 3dfx Defendants because "when the [Agreement] was being negotiated and then executed, 3DFX was insolvent and/or in the zone of insolvency and the officers and directors thereby owed a fiduciary duty to CARR."  (TAC ¶ 79.)  CARR contends given that the Third Amended Complaint alleges that the "secret agreement" was created during the same month as the Agreement, which caused 3DFX's insolvency, a reasonable inference for the purposes of these motions can be made that the "secret agreement" occurred when 3DFX was insolvent and the 3DFX Defendants had a fiduciary duty to CARR.

Given that the 3DFX Defendants owed a fiduciary duty to CARR to protect the assets of 3DFX, the Third Amended Complaint must show that this duty was breached.  The Third Amended Complaint alleges that this fiduciary duty was breached when the 3DFX Defendants entered into the "secret agreement" to hide the fact "that 3DFX would cease doing business on or about December 15, 2000, and would thereafter be in breach of the CARR Lease." (TAC ¶ 81.)  However, this alleged breach of fiduciary duty is not related to protecting the assets of 3DFX in order to satisfy creditors' claims.  Rather, the "secret agreement" is alleged to have breached a duty to disclose the source of 3DFX's rent payments and the fact that 3DFX was insolvent.  Since the Third Amended Complaint does not allege that the "secret agreement" diverted, dissipated or unduly risked the assets necessary to satisfy creditors' claims for which the 3DFX Defendants owed a fiduciary duty to

10

protect, the Third Amended Complaint has not alleged that the 3DFX Defendants breached their fiduciary duty.

Furthermore, the nature of the "secret agreement" as alleged in the Third Amended Complaint reasonably suggests that the "secret agreement" may have actually helped protect the assets of 3DFX. The "secret agreement" is alleged to have provided a means by which 3DFX could *continue* paying its rent obligations to CARR at a time when 3DFX was allegedly unable to meet its liabilities as they became due. (TAC ¶ 81.) Even though the "secret agreement" is alleged to have also included the cessation of rent payments, the execution of the "secret agreement" as alleged in the Third Amended Complaint does not suggest that the rent payments that would otherwise go to CARR were diverted to a preferred creditor or used by the 3DFX Defendants in promoting their own self-interest.

The Court DISMISSES CARR's Ninth Claim for Breach of Fiduciary Duty with leave to amend.

**H.     CARR's Tenth Claim for Fraud is indistinguishable from the First Claim and is thereby dismissed on the same ground.**

CARR's Tenth Claim for Fraud is a new claim asserted in the Third Amended Complaint. The fraud claim is primarily based upon a failure to disclose the "secret agreement." As discussed above, the injury from the alleged "secret agreement" is indistinguishable from those allegedly inflicted upon the corporation through the implementation of the Asset Purchase Agreement and are consequently unparticularized as the CARR.

Without reaching the merits of the claim, the Court DISMISSES CARR's Tenth Claim for Fraud for lack of standing; the dismissal is with prejudice.

**I.     CARR's Eleventh Claim for Conspiracy is dismissed for lack of standing.**

CARR alleges in its Third Amended Complaint that the Defendants conspired in creating the Agreement and the "secret agreement." (TAC ¶ 95.)

Under California law, "[n]o cause of action exists for conspiracy itself; the pleaded facts must show something which, without the conspiracy, would give rise to a cause of action."

11

Zumbrun v. Univ. of Southern California, 25 Cal. App. 3d 1, 12 (1972). "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equip. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994) (citing Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 784 (1979)).  Given that CARR has no standing to pursue the  contractual interference claim against the NVIDIA Defendants, it has no standing to pursue the conspiracy claim.

The Court DISMISSES CARR's Eleventh Claim for Conspiracy without leave to amend.

**J.     CARR's Twelfth Claim for relief under a "Tort of Another" theory is dismissed.**

Under the American rule, each party must generally pay his or her own attorney fees.  Gray v. Don Miller & Associates, Inc., 35 Cal. 3d 498, 504 (1984).  This rule is subject to several exceptions, one of which is the "tort of another," or "third party tort" exception, which allows recovery of attorney fees where the plaintiff is required to employ counsel to prosecute or defend an action against a third party because of the tort of the defendant.  Id. at 505.  CARR's alleged entitlement to recoupment of any attorney fees as damages arising from NVIDIA's allegedly tortious behavior toward 3DFX derives from its having standing to sue NVIDIA for the alleged tort. Lacking standing, CARR may not maintain this claim.

The Court DISMISSES CARR's Twelfth Claim for relief under a "Tort of Another" theory without leave to amend.

## V.  CONCLUSION

The Court GRANTS Defendants' Motions to Dismiss CARR's Third Amended Complaint.

With respect to the NVIDIA Defendants, the Court finds that there are no circumstances which would entitle CARR to proceed against NVIDIA for the alleged harm it inflicted on 3DFX and derivatively upon CARR.  Therefore, the First, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, and Twelfth claims against NVIDIA are dismissed with prejudice.

//

With respect to the 3DFX Defendants, all claims are dismissed with prejudice except the Ninth Claim for Breach of Fiduciary Duty.  Should CARR wish to file an amended complaint, it shall file within 30 days from the date of this Order.

Dated: September 29, 2006

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Douglas A. Applegate daa@sezalaw.com
Dwight Craig Donovan Dwight@mbvlaw.com
George M. Lee gml@sezalaw.com
Henry H. Oh henry.oh@dlapiper.com
James N. Kramer jkramer@orrick.com
John L. Fitzgerald jfitzgerald@pinnaclelawgroup.com
Jonathan B. Gaskin jgaskin@orrick.com
Jonathan S. O'Donnell jon@mbvlaw.com
Justin Myer Lichterman jlichterman@orrick.com
Karen Johnson-McKewan kjohnson-mckewan@orrick.com
Kim Y. Arnone karnone@buchalter.com
Leah Anne Nutting lnutting@orrick.com
Morgan William Tovey mtovey@reedsmith.com
Richard C. Darwin rdarwin@buchalter.com
Robert P. Varian rvarian@orrick.com
Ruth Young Kwon rkwon@orrick.com
William R. Overend woverend@reedsmith.com

Office of the U.S. Trustee/SJ
U.S. Federal Bld.
280 S 1st St. #268
San Jose, CA 95113-3004

USBC Manager-San Jose
US Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

**Dated:** September 29, 2006            **Richard W. Wieking, Clerk**

                                         **By:     /s/ JW Chambers**
                                                 **Elizabeth Garcia**
                                                 **Courtroom Deputy**