United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Carramerica Realty Corp., et al.,

Plaintiffs,

v.

NVIDIA Corporation, et al.,

Defendants.

_______________________________/

NO. C 05-00428 JW

**AMENDED ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Presently before the Court is nVidia Defendants' ("nVidia") Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment. (hereafter, "Motion," Docket Item No. 262.) The Court conducted a hearing on May 3, 2010. Based on the papers submitted to date and oral argument, the Court GRANTS nVidia's Motion for Summary Judgment.

**A. <u>Background</u>**

A detailed outline of the procedural history of this case can be found in the Court's January 27, 2010 Order Denying Defendants' Motion to Dismiss and Motion for Sanctions. (hereafter, "January 27 Order," Docket Item No. 260.) The Court reviews the procedural history to the extent that it implicates the present motion.

In its January 27, 2010 Order, the Court found that taking the allegations in Plaintiffs' Fifth Amended Complaint as true, Plaintiffs had adequately pleaded causes of action for interference with contractual relations, conspiracy, and tort of another. (January 27 Order at 3-8.) However, since Defendants presented substantial evidence disputing the existence of a secret agreement to mislead Plaintiffs with regard to 3dfx's ability to honor its lease agreement, the Court invited the parties to

United States District Court
For the Northern District of California

file cross-motions for summary judgment to provide the Court with a full opportunity to examine the evidentiary bases for Plaintiffs' Claims. (Id. at 8.)

The Court will address the facts of the case in the Discussion section of this Order to the extent that they are relevant to the present motion.

**B. Standards**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ." Id. at 323. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party "may not reply merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of

United States District Court
For the Northern District of California

fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

**C. Discussion**

nVidia moves for summary judgment on the ground that there is no evidence that the alleged secret agreement upon which all of Plaintiffs' claims are premised ever actually existed. (Motion at 5-6.) Since the Ninth Circuit affirmed the Court's dismissal of all of Plaintiffs' claims for lack of standing, except for those arising from the alleged secret agreement, Plaintiffs' standing to bring any claims depends upon the existence of that secret agreement. (Motion at 17.)

Under the law of the case doctrine, "the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993). In this case, the Ninth Circuit previously upheld the Court's conclusion that "the Trustee has exclusive standing to sue with respect to all claims asserted by Creditors based on an underlying injury to 3dfx." CarrAmerica Realty Corp. v. Nvidia Corp., 302 F. App'x 514, 516 (9th Cir. 2008). However, the Ninth Circuit further found that the Court erred in dismissing Plaintiffs' claims "based on an alleged 'secret agreement' between 3dfx and nVidia, pursuant to which agreement 3dfx continued to pay rent to CarrAmerica although nVidia had taken possession of the premises CarrAmerica leased to 3dfx." Id. Since Plaintiffs' claims arising out of the alleged secret agreement "are based on an injury to CarrAmerica by nVidia, which is neither bankrupt nor protected by any stay of actions, and not an underlying injury to the bankruptcy estate of 3dfx, CarrAmerica has standing to assert these claims." Id.

At the pleading stage, the Court was required to accept as true Plaintiffs' allegation that

> [i]n December, 2000, unbeknownst to Carr, nVidia entered into a secret agreement with 3dfx whereby–despite the fact that 3dfx knew it was going to cease its operations and terminate all of its employees in Austin as of December 15, 2000–3dfx was directed to continue making lease payments at a future date. By entering into this secret agreement, nVidia and 3dfx sought to create the false impression that 3dfx or a successor would continue to perform the rent obligations under the Lease. The purpose and effect of the secret agreement was to lull Carr into inaction with respect to the Lease. . . .

(Fifth Amended Complaint ¶ 19, Docket Item No. 211.)

United States District Court
For the Northern District of California

At the summary judgment stage, however, Plaintiffs must present sufficient evidence supporting their allegations of a secret agreement to create a triable issue of fact. To that effect, Plaintiffs present the deposition testimony of 3dfx Chief Financial Officer Richard Heddleson ("Heddleson"), stating that he struck a deal with Chris Hoberg of nVidia whereby nVidia agreed to reimburse 3dfx for rent payments made to Carramerica on its Austin office space, and that 3dfx did not inform anyone at CarrAmerica about this deal.[1]

Plaintiffs further present the deposition testimony of nVidia CEO Jensen Huang as evidence of what Plaintiffs contend is nVidia's motive to lull CarrAmerica into complacency with respect to 3dfx's ability to meet its obligations under its Lease for office space. Huang stated that he did not want to acquire 3dfx's Lease because "their office buildings looked like a bar" and had the appearance of "a place to play, not a place to work."[2] Huang further testified that he was "concerned" about securing adequate office space in Austin and that "it was critical for [nVidia] to get the Austin operation set up and productive as quickly as possible." (Id. at 519:2-8.)

In response, nVidia presents evidence that its agreement to offset 3dfx's rental payments was no secret at all, and that in fact, Plaintiffs were made aware of nVidia's intentions with respect to the office space long before 3dfx breached the Lease. First, Plaintiffs present a press release that 3dfx issued on December 15, 2000 and filed with the SEC as part of its Form 425 on December 18, 2000, in which it announced (1) plans to "substantially reduce all of its workforce," (2) its recommendation that its board of directors approve a sale of most of the company's assets to nVidia

---

[1] (Deposition of Richard A. Heddleson at 466:24-468:20, hereafter, "Heddleson Depo.," Declaration of Jonathan S. O'Donnell in Opposition to nVidia Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, hereafter, "O'Donnell Decl.," Ex. A, Docket Item No. 264.) nVidia points out that Mr. Heddleson's precise words in response to the question, "Did you tell anybody at CarrAmerica about this deal with Chris Hoberg?" was "No, we did not." (Heddleson Depo. at 468:18-20.) nVidia contends that Heddleson's statement is ambiguous as to whether he is referring solely to 3dfx or to 3dfx and nVidia collectively, and that Heddleson cannot properly testify as to what nVidia did or did not say to CarrAmerica. (nVidia Defendants' Reply in Support of Motion for Summary Judgment at 4, hereafter, "Reply," Docket Item No. 270.) The Court finds that Heddleson's statement can only serve as evidence that 3dfx, and not nVidia, failed to tell CarrAmerica about the rent reimbursement agreement.

[2] (Deposition of Jensen Huang at 491:14-17, 494: 7-23, hereafter, "Huang Depo.," O'Donnell Decl., Ex. B.)

United States District Court
For the Northern District of California

and a plan to dissolve the company upon completion of the asset sale, and (3) a plan to reduce office space.[3]

Second, in a response to nVidia's interrogatory, Plaintiffs stated, "In late December or early January 2001, various individuals at CarrAmerica learned that 3dfx had sold some or all of its assets to nVidia."[4] In the same interrogatory response, Plaintiffs stated,

> On or about February 22, 2001, an nVidia employee told a representative of CarrAmerica that nVidia would be moving from the Premises and that they hoped to move soon. When

---

[3] (nVidia Defendants' Request for Judicial Notice in Support of Motion for Summary Judgment, hereafter, "nVidia's RJN," Ex. A, Docket Item No. 263.) Since 3dfx's press release is a public document filed with the SEC, the Court GRANTS nVidia's Request for Judicial Notice with respect to that document pursuant to Fed. R. Evid. 201. Defendant CarrAmerica objects to admission of the press release on the grounds that it is irrelevant, constitutes inadmissible hearsay, and is not a judicially noticeable public document. (Carramerica Realty Corp.'s Evidentiary Objections and Motions to Strike Evidence Submitted by nVidia Defendants in Support of their Motion for Summary Judgment at 2, hereafter, "CarrAmerica's Objections," Docket Item No. 267.) The Court finds that the press release is relevant because it undermines a contention at the heart of Plaintiffs' case–that nVidia and 3dfx attempted to keep the APA and plans for winding down 3dfx's operations from CarrAmerica. Furthermore, the Court finds that the press release is not hearsay because it is not admitted for the truth of its contents, but to show that 3dfx and nVidia made no attempt to conceal their plans from the public. Finally, Defendant CarrAmerica relies on In re Wet Seal, Inc. Securities Litigation for the proposition that the Court may only take judicial notice of matters of public record "where they are relied upon by the complaint." 518 F. Supp. 2d 1148, 1157 (C.D. Cal. 2007). The Court finds that unlike here, In re Wet Seal was decided on a motion to dismiss, and the Court is not bound on summary judgment to only consider documents referenced in the Complaint. Furthermore, In re Wet Seal specifically acknowledges that documents filed with the SEC, like the press release here, are judicially noticeable. Id. Since the press release is relevant, not hearsay, and judicially noticeable, the Court OVERRULES Defendant CarrAmerica's objection as to that document.

[4] (Response to Interrogatory No. 2, Declaration of Karen G. Johnson-McKewan in Support of nVidia Defendants' Motion for Summary Judgment, hereafter, "KGJ Decl.," Ex. D at 4, Docket Item No. 262.) Defendant CarrAmerica objects to admission of its own interrogatory answers on the ground that they are unverified and thus have no evidentiary value. (CarrAmerica's Objections at 3.) In support of its objection, Defendant CarrAmerica relies on an out-of-jurisdiction case, Saria v. Massachusetts, which found certain interrogatory answers inadmissible because they were signed by the attorney but not by the client. 228 F.R.D. 536, 538 (S.D. W. Va. 2005). That case is distinguishable, however, because it involves an individual failing to verify her answers, as required by Fed. R. Civ. P. 33(b)(1)(A), rather than a corporation, whose answers may be furnished "by any officer or agent" pursuant to Fed. R. Civ. P. 33(b)(1)(B). It is well established that the signature of a corporation's attorney satisfies the verification requirement for interrogatory answers. See, e.g., Rea v. Wichita Mortgage Corp., 747 F.2d 567, 574 n.6 (10th Cir. 1984); Wilson v. Volkswagen of America, 561 F.2d 494, 508 (4th Cir. 1977); United States v. 42 Jars, 264 F.2d 666, 670 (3d Cir. 1959). Accordingly, the Court OVERRULES Defendant CarrAmerica's objection as to admission of its interrogatory answers.

United States District Court
For the Northern District of California

> asked, the nVidia employee responded that all former 3dfx employees (who had been hired by nVidia) would also be leaving the Premises.

Id.

Third, nVidia presents a series of internal CarrAmerica emails that also demonstrate Plaintiffs' knowledge of the asset sale and nVidia's intentions with respect to the Austin office space. In one of these emails, dated December 20, 2000, a CarrAmerica employee stated that Huang was "in Austin yesterday to meet with the employees and assess the Austin 3dfx operation," Huang told them that "they would deal with the real estate issues after the new year," and "nVidia is now paying all of the 3dfx bills."[5] In another email dated February 23, 2001, a CarrAmerica employee stated, "My hunch is we eventually get the 3dfx space back, so we will quietly start marketing it." (Id., Ex. 326.)

Finally, Plaintiffs' Rule 30(b)(6) witness, David Weaver, admitted in his deposition testimony that by March 2007 at the latest, CarrAmerica knew definitively that nVidia was "not going to take the 3dfx space," that "3dfx was not going to need its space anymore," and that in the face of this knowledge, the company "continued to treat 3dfx as [it] did before." (Deposition of David C. Weaver, Kramer Decl., Ex. A at 100:21-101:11, 112:7-14, 114:12-115:3.)

The Court finds that the evidence does not create a triable issue of fact that nVidia and 3dfx entered into a secret agreement with the purpose of lulling CarrAmerica into inaction with respect to its Lease with 3dfx. Plaintiffs' sole evidence supporting their allegation of such a secret agreement consists of Heddleson's testimony that 3dfx did not inform CarrAmerica of its arrangement with nVidia, whereby nVidia would offset the rent payments that 3dfx made to CarrAmerica for office space, and Huang's testimony that he had a low opinion of the 3dfx office space but needed to

---

[5] (Declaration of James N. Kramer in Support of nVidia Defendants' Motion for Summary Judgment, hereafter, "Kramer Decl.," Ex. A, Ex. 322, Docket Item No. 262.) Defendant CarrAmerica objects to admission of the internal CarrAmerica emails on the grounds that they have not been authenticated, and that they are inadmissible hearsay. (CarrAmerica's Objections at 2-3.) The Court finds that the emails were authenticated by Plaintiffs' own Rule 30(b)(6) witness during the course of his deposition. (See Kramer Decl. ¶¶ 3-11.) Furthermore, the emails are admitted not for the truth of their contents, but to demonstrate CarrAmerica's knowledge of nVidia's intentions regarding 3dfx's office space. Since the emails have been authenticated and are not admitted for the truth of their contents, the Court OVERRULES Defendant CarrAmerica's objection with regard to those documents.

secure alternative office space for nVidia's Austin operation as quickly as possible. In the face of substantial evidence that 3dfx and nVidia publicized the details of their Asset Purchase Agreement ("APA") and plans to downsize and find new office space, and further evidence that CarrAmerica was at least aware of the APA and that nVidia had no immediate plans to acquire 3dfx's Lease, the fact that 3dfx did not directly disclose to CarrAmerica its rent-payment arrangement with nVidia does not transform that arrangement into a "secret agreement." Nor can evidence that nVidia had a possible motive to keep its agreement with 3dfx a secret by itself create a triable issue of fact that nVidia intended to deceive CarrAmerica as to 3dfx's ability to continue to meet its obligations under the Lease. See Serfecz v. Jewel Food Stores, 67 F.3d 591, 600-01 (7th Cir. 1995) (holding that evidence of motive, "by itself, does not tend to exclude the possibility of independent, legitimate action and supplies no basis for inferring a conspiracy"); Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1013 (3d Cir. 1994).

Plaintiffs contend that the fact that 3dfx issued a press release announcing the APA and downsizing plans does not prove that CarrAmerica knew about 3dfx's impending sale and dissolution.[6] Plaintiffs further contend that none of CarrAmerica's emails definitively prove that Plaintiffs knew of the APA or the dissolution plan prior to March 2007. (Id. at 9-13.) The Court finds, however, that regardless of whether CarrAmerica found out about the APA as a result of 3dfx's press release, the press release demonstrates that 3dfx was not attempting to keep its deal with nVidia or its downsizing plans secret. Moreover, the fact that nVidia did not unequivocally tell CarrAmerica that it did not plan to assume 3dfx's Lease does not mean that nVidia proactively attempted to conceal its intentions. In the absence of any evidence that nVidia prevaricated or misrepresented itself to CarrAmerica, it would be mere speculation to conclude that nVidia and 3dfx had an agreement to keep their true plans hidden.

---

[6] (CarrAmerica Realty Corporation's Opposition to nVidia Defendants' Motion for Summary Judgment at 8, hereafter, "Opposition," Docket Item No. 264 (citing Weaver Depo. at 59:3-6).)

United States District Court
For the Northern District of California

Thus, the Court finds that no reasonable jury could conclude that a secret agreement existed between nVidia and 3dfx to lull CarrAmerica into complacency with regard to 3dfx's ability to meet its obligations under the Lease. Since the Ninth Circuit found that Plaintiffs only have standing to bring claims that arise out of that secret agreement, the lack of any evidence that such an agreement ever actually existed is fatal to Plaintiffs' action.

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment.[7]

**D. Conclusion**

The Court GRANTS Defendants' Motion for Summary Judgment. Judgment shall be entered accordingly.

The Court refers Defendants' anticipated Motion for Attorney Fees to Magistrate Judge Trumbull for a Report and Recommendation. Defendants shall notice their Motion before Judge Trumbull in accordance with the Judge's civil calendar.

Dated: June 29, 2010

JAMES WARE
United States District Judge

---

[7] Assuming Plaintiffs do have standing to bring their claims, the Court finds that they have not provided sufficient evidence to create a genuine issue of material fact as to any of their causes of action. For example, one of the necessary elements of Plaintiffs' claim for tortious interference with contractual relationship is proof of intentional acts designed to induce a breach or disruption of the contract. See, e.g., Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal.3d 1118, 1126 (Cal. 1990). Just as Plaintiffs fail to present sufficient evidence of a secret agreement between nVidia and 3dfx, Plaintiffs also fail to present sufficient evidence that nVidia acted with the intention of causing 3dfx to breach its contract. If anything, it appears to the Court that nVidia's actions allowed 3dfx to fulfill at least some of its obligations under the contract, by reimbursing 3dfx for rental payments that it did make, and that 3dfx's inability to fully meet the terms of its Lease was the result of its bankruptcy, not of any action taken by nVidia. Since Plaintiffs' conspiracy and tort of another claims are both premised on their tortious interference claim, both of those claims also fail as a matter of law.

United States District Court
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Betty Malka Shumener betty.shumener@dlapiper.com
Douglas A. Applegate daa@sezalaw.com
Douglas G. Boven dboven@reedsmith.com
Dwight Craig Donovan Dwight@mbvlaw.com
George M. Lee gml@sezalaw.com
Henry H. Oh henry.oh@dlapiper.com
James Neil Kramer jkramer@orrick.com
Jimmy S McBirney jmcbirney@orrick.com
John Laurence Fitzgerald jfitzgerald@pinnaclelawgroup.com
Jonathan B. Gaskin jgaskin@orrick.com
Jonathan Steven O'Donnell jon@mbvlaw.com
Justin Myer Lichterman jlichterman@orrick.com
Karen G. Johnson-McKewan kjohnson-mckewan@orrick.com
Kim Y. Arnone karnone@buchalter.com
Leah Anne Nutting lnutting@orrick.com
Leland Peter Ryan pete@mbvlaw.com
Morgan William Tovey morgantovey@quinnemanuel.com
Peter Gerard Bertrand pbertrand@buchalter.com
Raymond A. Cardozo rcardozo@reedsmith.com
Richard C. Darwin rdarwin@buchalter.com
Robert E. Izmirian rizmirian@buchalter.com
Robert Jacob Odson robert.odson@dlapiper.com
Robert P. Varian rvarian@orrick.com
Ruth Young Kwon rkwon@orrick.com
William R. Overend woverend@reedsmith.com

**Dated: June 29, 2010** **Richard W. Wieking, Clerk**

**By: /s/ JW Chambers**
**Elizabeth Garcia**
**Courtroom Deputy**